## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MONTEL AETNASTAK, INC. and )
MONTEL INC., )
          )
    **Plaintiffs,** )
          )   **No. 13 C 3801**
    **v.** )
          )   **Chief Judge Ruben Castillo**
**KRISTINE MIESSEN a/k/a KRISTINE** )
**N. SCHNEIDER, BRADFORD SYSTEMS** )
**CORPORATION, and** )
**SPACESAVER CORPORATION,** )
          )
    **Defendants.** )

## MEMORANDUM OPINION AND ORDER

Montel Aetnastak, Inc. ("MAI") and Montel Inc. ("Montel") (collectively "Plaintiffs") bring this action against Kristine Miessen a/k/a Kristine N. Schneider ("Miessen"), Bradford Systems Corporation ("Bradford"), and Spacesaver Corporation ("Spacesaver") (collectively "Defendants") alleging: (1) breach of the non-compete provision in Meissen's employment agreement with MAI; (2) tortious interference with a third-party contract; (3) interference with a prospective economic advantage; (4) misappropriation of Plaintiffs' confidential information and/or trade secrets in violation of both common law and the Illinois Trade Secrets Act ("ITSA"), 765 Ill. Comp. Stat. 1065/1 *et seq.*; (5) breach of fiduciary duties and the duty of loyalty; (6) civil conspiracy to misappropriate trade secrets and interfere with Plaintiffs' present and future economic relations. (R. 1, Compl.) Presently before the court are various motions to dismiss Montel as a party and to dismiss the Complaint. For the reasons stated below, the motions are denied.

## RELEVANT FACTS

Montel is a Canadian company incorporated and based in Montmagny, Quebec. (R. 1, Compl. ¶ 2.) MAI is an American subsidiary of Montel that is incorporated and based in Florida. (*Id.* ¶ 3.) Both companies manufacture and sell "high density shelving systems, mobile shelving storage, powered mobile shelving storage, and sliding art racks." (*Id.* ¶ 2.) Kristine Miessen is a citizen and resident of Indiana. (*Id.* ¶ 4.) Bradford is a corporation incorporated and based in Illinois that specializes in "mobile storage systems, mobile filing systems, industrial shelving, smart lockers, rotary storage systems, modular casework, modular office furniture, modular wall solutions, file and asset tracking systems, software and supplies." (*Id.* ¶ 5.) Spacesaver is a corporation incorporated in Wisconsin that sells "mobile shelving, cantilever shelving, locker storage and secure storage." (*Id.* ¶ 6.) Bradford is a distributor of Spacesaver products in Illinois, Indiana, and central and eastern Missouri. (*Id.* ¶ 5.)

On November 23, 2010, Miessen entered into an employment agreement with MAI as a Regional Sales Manager for the Midwest and a portion of the southeast United States. (*Id.* ¶ 14.) While employed with MAI, Miessen was based in Indiana but often traveled throughout her sales territory, which included Illinois, to promote MAI and Montel products. (*Id.* ¶ 15.) Miessen's employment agreement contained a non-competition clause that prohibited her from engaging in any business substantially related to the business of MAI for two years after the termination of the agreement. (R. 1-1, Ex. C, Employment Agreement at 20.)

In July or August 2011, while Miessen was still employed with MAI, a department store chain[1] contacted Montel to discuss a new high-density storage project. (R. 1, Compl. ¶ 23.) Plaintiffs worked extensively with the department store chain to modify one of Montel's mobile

---

[1] Plaintiffs do not specify the name of the department store chain in their complaint.

shelving products to suit the department store chain's retail needs. (*Id.* ¶¶ 24-25.) The shelving

product (the "Product") was adapted according to the department store chain's specific

requirements, and the modifications were not standard with other manufacturers' products in the

industry. (*Id.* ¶ 26.) Knowledge of the Product adaptations was limited to the MAI sales team,

which Miessen was a part of, Montel's design and engineering team, and a group of department

store chain employees. (*Id.*) Plaintiffs attempted to prevent their competitors from discovering

the details of their modifications. (*Id.* ¶¶ 26-27, 29.) The customized Product was not advertised

on the companies' websites or catalogs, nor was it promoted to other customers. (*Id.* ¶ 27.) In

addition, Plaintiffs did not announce their business relationship with the department store chain.

(*Id.* ¶ 29.) Plaintiffs entered into a financial transaction with the department store chain to

provide the Product for demonstration and further evaluation in an active store in Minneapolis,

Minnesota. (*Id.* ¶ 33.) Plaintiffs also arranged a transaction with the department store chain that

involved 135 stores in Canada and fourteen stores in the United States. (*Id.* ¶ 34.) The

department store chain submitted its first purchase order for the modified shelving units on

February 9, 2012. (*Id.* ¶ 40.) It advised Plaintiffs that the Product would be installed in phases,

20-35 stores at a time. (*Id.* ¶ 35.)

As part of the sales team, Miessen possessed knowledge about the Product, including its

pricing information. (*Id.* ¶¶ 28, 31.) Miessen also had direct contact with department store chain

employees at trade shows in 2011. (*Id.* ¶ 32.) On or around December 21, 2011, Bradford

attempted to recruit Miessen to work for it while she was still an employee of MAI. (*Id.* ¶ 47.)

Bradford approached Miessen again on or around January 20, 2012, to schedule a meeting to

discuss employment with Bradford. (*Id.*) On January 27, 2012, Miessen met with Bradford. (*Id.*

¶ 48.) Following the meeting, in early February 2012, she provided her "ideal" financial and

benefit employment package to a Bradford executive. (R. 1-1, Ex. D, Miessen's Statement at 21.) Miessen received an e-mail on February 27, 2012, from Bradford offering her employment. (*Id.*) The offer had "enhanced financial and benefit provisions" compared to what Miessen originally proposed in early February 2012. (*Id.*) Miessen alerted MAI on February 28, 2012, that she would be resigning from her position, and she resigned two weeks later. (R. 1, Compl. ¶ 53.) On February 29, 2012, Miessen accepted Bradford's offer of employment. (R. 1-1, Ex. D, Miessen's Statement at 21.)

In October or November 2012, Plaintiffs were invited to submit a proposal to install their Product in a store in Aventura, Florida. (R. 1, Compl. ¶ 35.) As of January or February 2013, MAI had not received any further instructions with regards to the Florida store. (*Id.* ¶ 41.) Plaintiffs allege that Bradford, on behalf of Spacesaver, produced its own high-density mobile carriage and performed a test case for the department store chain's Florida store. (*Id.* ¶ 35.) Plaintiffs further allege that Miessen traveled to Florida to oversee and participate in the test case. (*Id.* ¶ 36.) Eventually Plaintiffs learned through a third party that Spacesaver was outfitting the high-density mobile carriage for the department store chain's Florida store. (*Id.* ¶ 41.) Plaintiffs also allege that Miessen served as the project manager for the construction of the mobile carriages. (*Id.*)

Plaintiffs allege that Miessen serves as a liason for Bradford's contract with the department store chain to configure Spacesaver products for the Florida store. (*Id.* ¶ 43.) Plaintiffs further allege that Miessen was Bradford's direct point of contact with the department store chain, and through this role she communicated Montel's proprietary information, pricing and trade secrets to the department store chain's staff. (*Id.*)

## PROCEDURAL HISTORY

On May 22, 2013, Plaintiffs filed their complaint. (R. 1, Compl.) In Count I, Plaintiffs allege that Miessen breached the non-compete provision of her employment agreement by accepting employment with Bradford. (*Id.* ¶¶ 65-73.) In Count II, Plaintiffs allege that Bradford and Spacesaver intentionally interfered with Miessen's employment agreement with MAI. (*Id.* ¶¶ 74-81.) In Count III, Plaintiffs allege that Defendants wrongfully interfered with their expectation of entering into a valid business relationship with the department store chain. (*Id.* ¶¶ 82-87.) In Count IV, Plaintiffs allege that Defendants misappropriated Plaintiffs' trade secrets or otherwise confidential information about the Product in violation of both common law and the ITSA. (*Id.* ¶¶ 88-98.) In Count V, Plaintiffs allege that Miessen breached her fiduciary duties and her duty of loyalty to MAI by misappropriating Plaintiffs' confidential information. (*Id.* ¶¶ 99-105.) In Count VI, Plaintiffs allege that Defendants conspired to interfere with Plaintiffs' relationship with the department store chain and utilized Plaintiffs' trade secret or otherwise confidential information to steal Plaintiffs' customer. (*Id.* ¶¶ 106-109.) Finally, in Count VII, Plaintiffs seek to preliminary and permanently enjoin Defendants from using Plaintiffs' trade secrets and proprietary information and to enforce the non-compete provision in Miessen's employment agreement. (*Id.* ¶¶ 110-12.) Plaintiffs seek compensatory and punitive damages. (*Id.* ¶¶ 72-73, 80-81, 86-87, 97-98, 104-05, 108-09.)

On July 16, 2013, Miessen and Bradford moved to dismiss Montel as a party to the case for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1). (R. 22, Bradford's & Miessen's Mot. Dismiss Montel.) On the same day, Miessen moved to dismiss the complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2). (R. 26, Miessen's Mot. Dismiss.) Miessen and Bradford also moved to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6). (R. 29, Bradford's & Miessen's Mot. Dismiss Compl.) Finally, Spacesaver

moved to dismiss Montel as a party to the case for lack of standing pursuant to Rule 12(b)(1) and

to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6). (R. 21,

Spacesaver's Mot.)

**ANALYSIS**

I.      **Choice of Law**

Before evaluating the merits of Defendants' motions, the court must determine what

substantive law applies. A federal court sitting in diversity applies the forum state's choice-of-

law rules to determine which state's substantive law applies. *See Klaxon Co. v. Stentor Elec.*

*Mfg. Co.*, 313 U.S. 487, 496 (1941) ("The conflict of laws rules to be applied by the federal court

in Delaware must conform to those prevailing in Delaware's state courts."); *Auto-Owners Ins.*

*Co. v. Websoly Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) (citing *Klaxon Co.*, 313 U.S.

at 496). "Courts do not worry about conflict of laws unless the parties disagree on which state's

law applies." *Auto-Owners Ins. Co.*, 580 F.3d at 547 (quoting *Wood v. Mid-Valley Inc.*, 942 F.2d

425, 427 (7th Cir. 1991)).

In the instant case, Plaintiffs have selected Illinois as the forum and allege violations of

Illinois statutes and Illinois common law. (R. 1, Compl.) Defendants only raise choice-of-law

issues in one of their four motions, (*see* R. 30, Bradford's & Miessen's Mem. Dismiss Compl. at

4), and do not disagree with Plaintiffs as to the application of Illinois law. (*Id.*) In all four of

their motions, Defendants seek dismissal of Plaintiffs' complaint under Illinois law. (R. 22,

Bradford's & Miessen's Mot. Dismiss Montel; R. 26, Miessen's Mot. Dismiss; R. 29, Bradford's

& Miessen's Mot. Dismiss Compl.; R. 21, Spacesaver's Mot.) Because the parties agree that

Illinois law applies, the Court will apply Illinois State law to Defendants' motions.

Having established that Illinois State substantive law applies, the Court now moves to resolving Defendants motions to dismiss. The Court first addresses Defendants' motions to dismiss pursuant to Rule 12(b)(1), and then turns to the motions to dismiss pursuant to Rules 12(b)(2) and 12(b)(6).

## II.     Defendants' Rule 12(b)(1) motions to dismiss

Defendants argue in two separate motions that Montel should be dismissed as a party pursuant to Federal Rule of Civil Procedure 12(b)(1). (R. 24, Bradford's & Miessen's Mem. Dismiss Montel at 3; R. 41, Spacesaver's Reply at 7.)

### A.     Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) asks the court to dismiss an action over which it allegedly lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction." *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn–Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). All reasonable inferences are drawn in favor of the plaintiff, and all well-pleaded allegations are accepted as true. *Long Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Finally, when considering a Rule 12(b)(1) motion to dismiss, the court may look beyond the allegations of the complaint and may consider other submitted evidence. *See Johnson v. Apna Ghar, Inc.*, 330 F.3d 999, 1001 (7th Cir. 2001) (quoting *id.*)

### B.     Whether Montel has standing

Miessen and Bradford argue that Montel should be dismissed as a party because it lacks standing and cannot demonstrate an injury in fact or an invasion of any legally protected interest. (R. 24, Bradford's & Miessen's Mem. Dismiss Montel at 3.) Plaintiffs argue that Montel was

injured directly and indirectly as the undisclosed principal of its agent, MAI. (R. 37, Pls.' Opp'n Bradford's & Miessen's Mot. Dismiss Montel at 5, 9-11, 13.) The Court addresses each argument in turn.

### i. Whether Montel has standing in this case as to Counts I, II, and V of the Complaint

Bradford and Miessen argue that Montel lacks standing with regards to Counts I, II, and V of the complaint because it is neither a party nor a third-party beneficiary of the employment agreement with Miessen, nor is it the undisclosed principal of its agent, MAI. (R. 24, Bradford's & Miessen's Mem. Dismiss Montel at 3.) Plaintiffs do not allege that Montel is a direct or a third-party beneficiary, but rather that Montel has standing as the undisclosed principal of its agent, MAI. (R. 37, Pls.' Opp'n Bradford's & Miessen's Mot. Dismiss Montel at 5-6.)

"The test of agency is whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal." *Chemtool, Inc. v. Lubrication Techs., Inc.*, 148 F.3d 742, 745 (7th Cir. 1998) (citing *Anderson v. Boy Scouts of Am., Inc.*, 589 N.E.2d 892, 894 (Ill. Appt. Ct. 5th Dist. 1992)); *see also Caligiuri v. First Colony Life Ins. Co.*, 742 N.E.2d 750, 756 (Ill. App. Ct. 1st Dist. 2000). Under Illinois law, "a complaint relying on agency must plead facts which, if proved, could establish the existence of an agency relationship." *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 592 (Ill. 1996). Merely pleading the legal conclusions of agency is insufficient. *Id.*

Here, Plaintiffs improperly asserted that "MAI is an agent for Montel Products in the United States" based upon Plaintiffs' own legal conclusions rather than an application of Illinois law. (R. 1, Compl. ¶¶ 11.) Plaintiffs also state, however, that as part of Montel's efforts to develop business in the United States, MAI "transacts business via federal (General Services

Administration) and state government purchasing contracts" on behalf of Montel. (*Id.* ¶ 11-12.) Further, MAI operates "within the Montel family of companies." (*Id.* ¶ 11.) Drawing all inferences in the Plaintiff's favor, Montel controls the manner and method in which MAI accomplishes its goal of developing business in the United States. Additionally, by permitting MAI to enter into purchasing contracts on behalf of Montel, MAI has the ability to affect Montel's legal relationships. Therefore, the Court finds that Plaintiffs allege sufficient facts to demonstrate that MAI acted as Montel's agent.

Seeking to avoid this result, Spacesaver argues that Montel's dismissal as a party to the suit is proper because Montel is not a party to the employment agreement between MAI and Miessen. (R. 41, Spacesaver's Reply at 7; *See* Restatement (Second) of Agency § 302 (1958)). Spacesaver overlooks the fact that in order to exclude an undisclosed principal from a contract a party must explicitly do so, which neither Montel nor Miessen have done here. Restatement (Third) of Agency § 6.03 cmt. b (2006). Alternatively, Spacesaver argues that if Montel is a proper party to the employment agreement, MAI must be dismissed because once the principal brings suit the rights of the agent are extinguished. (R. 41, Spacesaver's Reply at 8.) Spacesaver supports this proposition by citing to *Warder v. White*, 14 Ill. App 50 (Ill. App. Ct. 1st Dist. 1883). In *Warder,* the court held that "the right of the principal to sue is paramount to that of the agent and in cases where either may bring the action, the former, by giving notice to the other contracting party, puts an end to the agent's right of action." 14 Ill. App at 54. The Seventh Circuit addressed this issue in *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750 (7th Cir. 2008), citing with approval to the Restatement (Third) of Agency § 6.03. 521 F.3d at 758. The Restatement makes clear that, unless explicitly excluded by the contract, the principal is a party to the contract, along with the agent and third party. Restatement (Third) of Agency § 6.03. In

*Rawoof*, the Seventh Circuit found that the plaintiff failed to develop a factual basis for his claim that he was an agent of the principal, but nonetheless upheld the rule that both agent and principal may bring suit. 521 F.3d at 758. Here, the employment agreement does not explicitly limit enforceability to MAI. In addition, the Court has already determined, as discussed above, that Plaintiffs have successfully pled a valid principal-agent relationship. Thus, Montel and MAI may enforce the agreement without extinguishing each other's right to bring suit.

Therefore, the Court finds that Montel does have standing as to Counts I, II and V, and Defendants' motions to dismiss (R. 21, Spacesaver's Mot.; R. 22, Bradford's & Miessen's Mot. Dismiss Montel) are denied as to these counts.

> ### ii. Whether Montel lacks standing as to Counts III, IV, VI, and VII of the Complaint

Defendants argue that Montel lacks standing with regards to Counts III, IV, VI, and VII because it suffered no injury in fact and cannot establish Article III standing. (R. 24, Bradford's & Miessen's Mem. Dismiss Montel at 7-8; R. 23, Spacesaver's Mem. at 4.) Plaintiffs contend that Montel suffered direct harm from Defendants' alleged tortious conduct and thus have standing as to Counts III, IV, VI, and VII. (R. 37, Pls.' Opp'n Bradford's & Miessen's Mot. Dismiss Montel at 9-11.) To satisfy Article III's standing requirement, a party must establish: (1) an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lee v. City of Chi.*, 330 F.3d 456, 468 (7th Cir. 2003) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Here, Plaintiffs allege that Montel worked with the department store chain to design a particularized mobile shelving unit, which Miessen was exposed to as part of MAI's sales team.

(R. 1, Compl. ¶ 26.) Plaintiffs also allege that Miessen had access to Montel's pricing information. (*Id.* ¶ 31.) Plaintiffs allege that Miessen took this confidential and proprietary information with her to Bradford and shared it with her new employer. (*Id.* ¶ 101.) Plaintiffs allege that they had arranged a transaction with the department store chain that involved 135 stores in Canada and 14 stores in the United States, and that Defendants had knowledge of Plaintiffs' expectancy of entering into a business relationship with the department store chain. (*Id.* ¶ 34, 84.) Plaintiffs further allege that Bradford and Spacesaver used this information to secure a contract to provide its own Product for one of the department store chain's stores in Aventura, Florida, (*Id.* ¶¶ 41-43), and in doing so, Defendants purposefully dismantled its business relationship with the department store chain. (*Id.* ¶ 85.) Plaintiffs have provided sufficient facts to demonstrate an injury in fact because Defendants alleged misuse of Montel's confidential and proprietary information caused Montel to lose a business relationship. Further, Plaintiffs have established a causal connection between Defendants misconduct and Montel's injury. Last, a favorable decision would redress Plaintiffs' injuries by providing compensatory damages and injunctive relief to ensure that further business opportunities are not lost due to Defendants' misappropriation of Plaintiffs' confidential and proprietary information.

Thus, Plaintiffs have standing as to Count III, their wrongful interference claim, and Count IV, their misappropriation of trade secrets claim. Plaintiffs therefore also have standing as to Count VI, in which Plaintiffs allege that Defendants engaged in a civil conspiracy to misappropriate Plaintiffs' trade secrets and interfere with their present and future economic relations, because Count VI is premised on the underlying harm arising out of Counts III and IV. (*Id.* ¶¶ 106-09.) Similarly, Plaintiffs also have standing as to Count VII, in which Plaintiffs

request a preliminary and permanent injunction against the conduct outlined in Counts III and IV. (*Id.* ¶¶ 110-12.)

For the reasons stated above, Defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing, (R. 21, Spacesaver's Mot.; R. 22, Bradford's & Miessen's Mot. Dismiss Montel), are denied as to all counts in the complaint.

## II.    Miessen's Rule 12(b)(2) motion to dismiss

Miessen argues that she should be dismissed from the suit pursuant Federal Rule of Civil Procedure 12(b)(2) because the Court lacks personal jurisdiction over her. (R. 27, Miessen's Mem. at 2.)

### A.    Legal Standard

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal where a court lacks personal jurisdiction over a party. Fed. R. Civ. P. 12(b)(2). Once the defendant moves to dismiss the complaint under Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). In ruling on a Rule 12(b)(2) motion to dismiss, the Court may consider matters outside the pleadings. *See id.* When the Court rules on a personal jurisdiction issue based on the submission of written materials, without an evidentiary hearing, the plaintiff's burden is only to make out a *prima facie* case of personal jurisdiction. *Id.* In evaluating whether the *prima facie* standard has been satisfied, "the plaintiff 'is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record.'" *Id.* (quoting *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983)).

### B.    Whether the Court has personal jurisdiction over Miessen

Miessen argues that the complaint should be dismissed as to her pursuant to Federal Rule of Civil Procedure 12(b)(2) because the Court lacks personal jurisdiction over her. (R. 27, Miessen's Mem. at 2.) Plaintiffs argue that the Court's exercise of general jurisdiction over Miessen would be proper because she has had systematic and continuous contacts with Illinois. (R. 36, Pls.' Opp'n Miessen's Mot. Dismiss at 4-5.) Plaintiffs also argue that specific jurisdiction over Miessen is proper because she has purposely availed herself of the privileges of conducting business in Illinois by purposely directing her activities at this state. (*Id.* at 5-6.)

A federal court sitting in diversity in Illinois has personal jurisdiction over a defendant if jurisdiction is proper under Illinois's long-arm statute. *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 760-61 (7th Cir. 2008). The Illinois long-arm statute contains a catch-all provision that "permits its courts to exercise jurisdiction on any basis permitted by the Illinois and United States Constitutions." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 714 (7th Cir. 2002) (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir. 2000)). *See also* 735 Ill. Comp. Stat. 5/2-209(c)). The Seventh Circuit has found "no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." *Id.* at 715. As a result, the state and federal due process analyses merge.

The exercise of personal jurisdiction over a defendant comports with due process if the defendant has sufficient "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940) (internal quotation marks omitted). These minimum contacts must create a "substantial connection" between the defendant and the forum state. *Asahi Metal Indus. Co. v. Superior*

*Court of Cal., Solano Cnty.*, 480 U.S. 102, 109 (1987) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). A defendant has sufficient minimum contacts with the forum state if "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Burger King*, 471 U.S. at 474 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Thus, the defendant's minimum contacts "must come about by *an action of the defendant purposefully directed toward the forum State*." *Asahi*, 480 U.S at 112. These minimum contacts support the exercise of personal jurisdiction if the defendant "purposefully avails [him]self of the privilege of conducting activities within the forum State." *Burger King*, 471 U.S. at 475.

The Supreme Court has distinguished between general and specific personal jurisdiction. *Hyatt Int'l*, 302 F.3d at 713 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 nn.8, 9 (1984)). General jurisdiction exists where a defendant has "continuous and systematic" contacts with the forum state. *Id.* Specific jurisdiction exists for "controversies that arise out of or are related to the defendant's forum contacts." *Id.* The Court addresses each type of jurisdiction in turn.

i.      **Whether this Court has general jurisdiction over Miessen.**

Miessen argues that the Court lacks general jurisdiction over her because her contacts with the state do not rise to the level of approximating physical presence in Illinois. (R. 44, Miessen's Reply at 5.) Miessen alleges that she lived in Indiana during the relevant time period and currently resides there as well. (*Id.*) Miessen also alleges that she does not currently have clients in Illinois or make sales to Illinois entities and that she no longer attends trade shows in Illinois. (R. 27, Ex. 1, Miessen's Aff. ¶¶ 15-17.) Plaintiffs counter that Miessen had continuous and systematic contact with Illinois as part of the MAI sales team and continues to have

continuous and systematic contact with Illinois by virtue of her employment with Bradford. (R. 36, Pls.' Opp'n Miessen's Mot. Dismiss at 4-5.)

General jurisdiction exists where a defendant has "continuous and systematic" contacts with the state in question, regardless of whether the suit arises out of or is related to the defendant's contacts with the forum. *Hyatt Int'l*, 302 F.3d at 713. To determine whether the contacts of the defendant are sufficiently systematic and continuous, courts analyze the nature as well as the substantiality of the defendant's contacts with the forum state, such as whether and to what extent the defendant conducts business in the forum state. *See Helicopteros Nacionales*, 466 U.S. at 416-18. "The threshold for general jurisdiction is high; the contacts must be sufficiently extensive and pervasive to approximate physical presence." *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010).

While at MAI, Miessen's employment agreement explicitly specified that her sales territory included Illinois. (*Id.* at 6; R. 1-1, Ex. C, Employment Agreement at 17.) Plaintiffs allege that although Miessen was based in Indiana, she traveled to trade shows in Chicago, Illinois on at least two separate occasions in 2011 as part of her sales efforts; she was the sole MAI sales representative in Illinois; and she realized sales of over $100,000.00 from Illinois alone. (R. 36, Pls.' Opp'n Miessen's Mot. Dismiss at 5; R. 36-1, Ex. 1, Janisko's Decl. ¶¶ 9, 16.) Miessen acknowledges that approximately 25% of her sales were made in Illinois over the course of her employment with MAI. (R. 44, Miessen's Reply at 5.) Plaintiffs contend that after leaving MAI, Miessen accepted a job offer from Bradford, a company based in Illinois. (R. 1, Compl. ¶¶ 5, 53.) These facts do not support a finding that this Court has general jurisdiction over Miessen. While Miessen had regular contact with Illinois during her employment with MAI, she stopped working with Illinois entities when she resigned from MAI in February 2012

and began working for Bradford in April 2012. (R. 27, Ex. 1, Miessen's Aff. ¶¶ 13-14.) Since she began working for Bradford, Miessen has been based in Indiana, and has no Illinois clients and makes no sales to Illinois entities. (R. 27, Miessen's Mem. at 2.) Miessen's contacts with Illinois are therefore not "continuous or systematic" at the time of the events giving rise to this suit. The high threshold for general jurisdiction has not been met because Miessen's contacts with Illinois are not "sufficiently extensive and pervasive to approximate physical presence." *Tamburo*, 601 F.3d at 701. Therefore, the Court cannot assert general jurisdiction over Miessen.

### ii. Whether this Court has specific jurisdiction over Miessen.

Miessen argues that she had insufficient contacts to establish specific jurisdiction over her with regards to the any of the alleged illegal conduct in the complaint. (R. 27, Miessen's Mem. at 4.) Plaintiffs respond that exercising specific jurisdiction is proper because Miessen purposely availed herself of Illinois through her contacts with Bradford. (R. 36, Pls.' Opp'n Miessen's Mot. Dismiss at 7.)

### a. Whether this Court has specific jurisdiction over Miessen as to Count I

Miessen argues that she does not have sufficient minimum contacts with Illinois with respect to Count I in which Plaintiffs allege breach of contract, because the dealings between Miessen and MAI with respect to her employment agreement occurred outside of Illinois and because Miessen's business with Bradford is similarly devoid of contacts with Illinois. (R. 27, Miessen's Mem. at 5-6.) Plaintiffs argue that this Court has specific jurisdiction over Miessen as to Count I because she purposely availed herself of Illinois through her employment negotiations with Bradford. (R. 36, Pls.' Opp'n Miessen's Mot. Dismiss at 7.)

Specific jurisdiction exists "for controversies that arise out of or are related to the defendant's forum contacts." *Hyatt Int'l*, 302 F.3d at 713. "[S]pecific jurisdiction is not

appropriate 'merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must *directly arise* out of the specific contacts between the defendant and the forum state." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1278 (7th Cir. 1997) (quoting *Sawtelle v. Farrell*, 70 F.3d 1381, 1389 (1st Cir. 1995)). The Seventh Circuit has held that "in a breach of contract case, it is only the dealings *between the parties in regard to the disputed contract* that are relevant to minimum contacts analysis." *Id.* (internal citation and quotation marks omitted).

Thus, the relevant issue is whether Miessen's alleged breach of contract arose out of her contacts with Illinois. Over the course of roughly three months, beginning in December 2011, Miessen communicated with Bradford, a company based in Illinois. (R. 1-1, Ex. D, M.'s Statement at 21.) She exchanged e-mails and telephone calls with Bradford personnel in Illinois. (R. 27, Ex. 1, Miessen's Aff. ¶¶ 5, 10-12.) She accepted a job offer from Bradford on February 29, 2012, (*id.* ¶ 13), and allegedly violated the non-competition provision of her employment agreement with MAI in doing so, (R. 1, Compl. ¶ 61). She presently works for and is paid a salary by Bradford. (R. 27, Ex. 1, Miessen's Aff. ¶ 3.) Although Bradford initiated the negotiation process, Miessen willingly participated by communicating with Bradford personnel in Illinois via telephone and e-mail over the course of approximately three months. (R. 1-1, Ex. D, Montel's Statement at 21.) "Sustained contact over the course of several months . . . is 'not random, fortuitous, or attenuated.'" *Abbott Labs., Inc. v. BioValve Techs., Inc.*, 543 F. Supp. 2d 913, 921 (N.D. Ill. 2008) (quoting *Mid-Am. Tablewares v. Mogi Trading Co.*, 100 F.3d 1353, 1361 (7th Cir. 1996)). That Miessen's negotiations with Bradford took place by telephone and e-mail does not attenuate her substantial contact with Illinois because "[i]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and

wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Burger King*, 471 U.S. at 476. Miessen's alleged breach of contract arose directly from her dealings with Bradford in Illinois. Thus, the Court finds that it has specific jurisdiction over Miessen with regards to Count I.

### b. Whether the Court has specific jurisdiction over Miessen as to Count III

Miessen also argues that she had insufficient contacts to establish specific jurisdiction over her with regards to Count III, in which Plaintiffs allege interference with their prospective economic advantage as to the department store chain, because she took no actions in Illinois that would constitute an intentional interference with Plaintiffs' prospective economic advantage. (R. 27, Miessen's Mem. at 7-8.) Plaintiffs contend that Miessen had direct and tortious contact with the department store chain during her employment with MAI in Illinois, which establishes sufficient minimum contacts with Illinois. (R. 36, Pls.' Opp'n Miessen's Mot. Dismiss at 11.)

The specific jurisdiction inquiry for a claim based on an intentional tort focuses on "whether the conduct underlying the claim[] was purposely directed at the forum state." *Tamburo*, 601 F.3d at 702 (citing *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008)). The Seventh Circuit has instructed that: (1) intentional conduct (or intentional and allegedly tortious conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt (or that the plaintiff would be injured) in the forum state establishes that the defendant purposely directed his activity at the forum state. *Felland v. Clifton*, 682 F.3d 665, 674-75 (7th Cir. 2012) (quoting *Tamburo*, 601 F.3d at 703).

Here, Plaintiffs have met the first prong of the test by alleging that Miessen intentionally interfered with the business relationship between Plaintiffs and the department store chain by providing Spacesaver and Bradford Plaintiffs' proprietary information, which in turn allowed

Spacesaver to convince the department store chain that it could provide a better Product. (R. 36, Pls.' Opp'n Miessen's Mot. at 10; R. 1, Compl. ¶ 85.) Plaintiffs have met the second prong by alleging that Miessen's communication of proprietary information was directed at Illinois due to Bradford's location in Illinois. (R. 36, Pls.' Opp'n Miessen's Mot. Dismiss at 10.) Plaintiff's have failed, however, to even argue that Miessen had any knowledge that the effects would be felt in Illinois, or that any effects were actually felt in Illinois. Plaintiffs are based in Quebec and Florida, and the store at issue is in Aventura, Florida. (R. 1, Compl. ¶¶ 2, 3, 41.) Any injury suffered by Plaintiffs would have occurred in Quebec or Florida, not Illinois. Plaintiff argues that Illinois was the "central point of contact" between Miessen, Bradford and Spacesaver. (R. 36, Pls.' Opp'n Miessen's Mot. Dismiss at 11.) Whether Plaintiffs' characterization is accurate or not is beside the point, as it does not establish that any injury occurred in Illinois. Therefore, Plaintiffs have failed to establish that Miessen purposely directed her conduct at Illinois.

For this reason, the Court does not have specific jurisdiction over Miessen with regards to Count III of the complaint.

### c. Whether the Court has specific jurisdiction over Miessen as to Counts IV and V

Miessen further argues that she had insufficient contacts with Illinois to establish specific jurisdiction over her as to Counts IV and V of the complaint, in which Plaintiffs allege misappropriation of their confidential information and breach of Miessen's fiduciary duties, respectively. (R. 27, Miessen's Mem. at 9-11.) Plaintiffs argue that the Court has specific jurisdiction over Miessen as to Counts IV and V because she allegedly communicated confidential information to Bradford in Illinois when she negotiated her employment in late 2011 and early 2012, thereby directing allegedly tortious actions at Illinois. (R. 36, Pls.' Opp'n Miessen's Mot. Dismiss at 12-13.)

In cases of intentional torts, specific jurisdiction is appropriate where: "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo*, 601 F.3d at 702 (citing *Burger King*, 471 U.S. at 472). As discussed above, intentional conduct expressly aimed at the forum state (that occurred with the defendant's knowledge that the effects would be felt in the forum state) establishes that the defendant purposefully directed his activity at the forum state. *Felland*, 682 F.3d at 674-75 (quoting *Tamburo*, 601 F.3d at 703).

In Counts IV and V, Plaintiffs allege that during Miessen's employment negotiations with Bradford, she breached her fiduciary duties to Plaintiffs by misappropriating confidential and proprietary information about the Product and sharing it with Bradford in Illinois. (R. 1, Compl. ¶¶ 88-105.) Plaintiffs allege that the injury occurred in Illinois because Miessen misappropriated confidential information during her employment negotiations with Illinois-based Bradford. (R. 36, Pls. Opp'n Miessen's Mot. Dismiss at 12.) Thus, Plaintiffs have sufficiently demonstrated that Miessen purposely directed her conduct at Illinois, and the resulting injury arose out of her activities in Illinois. Therefore, the Court finds that Plaintiffs have established that Miessen purposefully directed her activities at Illinois. In addition, Plaintiffs' claims arise directly out of Miessen's contacts with Illinois. As a result, the Court concludes that Miessen had sufficient minimum contacts with Illinois for the Court to exercise specific jurisdiction over her with regards to Counts IV and V.

### d. Whether the Court has specific jurisdiction over Miessen as to Count VI

Miessen finally argues that Plaintiffs have failed to establish that she had sufficient minimum contacts with Illinois with regards to Count VI. (R. 27, Miessen's Mem. at 11.) In

Count VI, Plaintiffs allege that Miessen conspired with Bradford to misappropriate Plaintiffs' confidential information and interfere with Plaintiffs' relationship with the department store chain during her employment negotiations with Bradford in late 2011 and early 2012. (R. 36, Pls.' Opp'n Miessen's Mot. Dismiss at 13.) Plaintiffs contend that Miessen acted in Illinois by conspiring with Bradford during a visit to Chicago in February 2012, and that such action establishes sufficient minimum contacts as to Count VI. (R. 36, Pls.' Opp'n Miessen's Mot. Dismiss at 13-14; R. 36-1, Ex. 1, Janisko Decl. ¶ 13.)

The "conspiracy theory" of personal jurisdiction is based on the "time honored notion that the acts of [a] conspirator in furtherance of a conspiracy may be attributed to the other members of the conspiracy." *Textor v. Bd. of Regents of N. Ill. Univ.*, 711 F.2d 1387, 1392 (7th Cir. 1983). In recent years, however, Illinois courts have applied the conspiracy theory of jurisdiction more narrowly. In *Ploense v. Electrolux Home Products*, the Illinois appellate court traced the history of the conspiracy theory, finding that it was originally grounded in the idea that one conspirator's actions in the forum state could be imputed to fellow conspirators because each conspirator acts as an agent of the others. 882 N.E.2d 653, 666 (Ill. App. Ct. 4th Dist. 2007) (citing *Green v. Advance Ross Elect. Corp.*, 427 N.E.2d 1203, 1208 (Ill. 1981)). The Illinois Supreme Court later reversed course, holding that no agency relationship exists among conspirators. *Buckner v. Atlantic Plant Maint., Inc.*, 694 N.E.2d 565, 571 (Ill. 1998)). The *Ploense* court found that the *Buckner* holding "effectively scuttle[ed] the [conspiracy] theory of jurisdiction." 882 N.E.2d 653, 666 (Ill. App. Ct. 4th Dist. 2007) (internal quotation marks omitted). In *Ploense*, the appellate court ultimately declined to exercise personal jurisdiction pursuant to the conspiracy theory because the plaintiff did not allege any activity that the defendant purposefully directed at Illinois. *Id.* at 667 ("If a conspirator's actions were

purposefully aimed at the forum, then jurisdiction is present. If not, assertion of jurisdiction would be unconstitutional") (internal citation omitted)). Post-*Ploense*, the Seventh Circuit has also questioned the continuing viability of the conspiracy theory of jurisdiction in Illinois. *See Smith v. Jefferson Cnty Bd. of Educ.*, 378 Fed. App'x 582, 585-86 (7th Cir. 2010).

Here, contrary to *Ploense*, Plaintiffs allege that Miessen purposefully directed activity at Illinois when she conspired to misappropriate Plaintiffs' proprietary and confidential information. (R. 1, Compl. ¶ 101.) Plaintiffs allege that this action was part of a conspiracy between Bradford, Spacesaver, and Miessen to approach the department store chain with their own competing Product. (*Id.* ¶¶ 39, 41-44.) Plaintiffs further allege that Defendants used the proprietary information to secure a contract with the department store chain for a store in Aventura, Florida, disrupting Plaintiffs' burgeoning business relationship with the department store chain. (*Id.* ¶¶ 43, 84-86.) Making all reasonable inferences in Plaintiffs favor, the Court finds that Plaintiffs have sufficiently demonstrated that Miessen's activities in furtherance of the conspiracy were purposefully directed at Illinois, and therefore the Court may exercise specific jurisdiction over Miessen with respect to Count VI.

### e. Whether the exercise of specific jurisdiction over Miessen comports with traditional notions of fair play and substantial justice

Finally, the Court must consider whether exercising specific jurisdiction over Miessen with regards to Counts I, IV, V, and VI of the complaint comports with traditional notions of fair play and substantial justice. The Supreme Court has identified several factors relevant in this determination: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared

interest of the several States in furthering fundamental substantive social policies." *Felland,* 682 F.3d at 677 (7th Cir. 2012) (quoting *Burger King*, 471 U.S. at 477). While jurisdictional rules may not be employed in a manner that puts a defendant at a severe disadvantage, a defendant who purposefully has directed his activities at forum residents must present a compelling case that forcing it to litigate in the forum would be unreasonable in order to defeat jurisdiction. *Id.* "A party's concern that a forum is particularly unfair or inconvenient 'usually may be accommodated through means short of finding jurisdiction unconstitutional.'" *Id.* (quoting *Burger King*, 471 U.S. at 477).

First, Miessen does not contend that forcing her to litigate in Illinois places her at a severe disadvantage. Miessen may face some burden in being forced to defend an action in a state other than her home, but out-of-state defendants always face such a burden, and there is no suggestion that Miessen's hardship would be any greater than that routinely tolerated by courts exercising specific jurisdiction against nonresidents. *See, e.g., Logan Prods., Inc. v. Optibase, Inc.*, 103 F.3d 49, 54 (7th Cir. 1996) (noting that it is usually not unfair to force a defendant to defend a lawsuit in a state in which it has engaged in economic activity). Second, Illinois has a strong interest in providing a forum for individuals to seek redress for tort injuries suffered within the state and inflicted by out-of-state actors. *See Tamburo*, 601 F.3d at 709. Although Plaintiffs could have sued the individual defendants in their home jurisdictions, that would have been "cumbersome and impractical" for the Plaintiffs. *Id.* In this type of fractured litigation, which has multiple defendants, plaintiffs and claims, judicial efficiency is of particular concern. Each party is located in a different state, with one plaintiff located in Canada. Plaintiffs have elected to file suit in Illinois. It is far more reasonable to subject Miessen to suit in Illinois than to force Plaintiffs to file separate lawsuits to give each defendant the privilege of defending this

litigation in his or her home state when jurisdiction is otherwise proper in Illinois. Accordingly, the Court concludes that the exercise of personal jurisdiction in Illinois over Miessen with respect to Counts I, IV, V, and VI comports with traditional notions of fair play and substantial justice.

For the reasons stated above, Miessen's motion to dismiss pursuant to Rule 12(b)(2) is granted as to Count III of the complaint and denied as to Counts I, IV, V, and VI.

## III.  Defendants' Rule 12(b)(6) motion to dismiss.

Defendants argue that Counts I through VI of Plaintiffs' complaint should be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 30, Bradford's & Miessen's Mem. Dismiss Compl.; R. 41, Spacesaver's Reply.)

### A.  Legal Standard

A motion under Federal Rule of Civil Procedure 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a 'short and plain statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 555). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. "Detailed factual allegations" are not

required, but the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when its factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

A document that is attached to a pleading "is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Thus, when ruling on a Rule 12(b)(6) motion to dismiss, a court must "consider documents attached to the complaint as part of the complaint itself." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (citing *Int'l Mktg., Ltd. v. Archer-Daniels-Midland Co.*, 192 F.3d 724, 729 (7th Cir. 1999)). "Such documents may permit the court to determine that the plaintiff is not entitled to judgment" in his favor. *Id.* (citing *Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009)).

### B.    Whether Plaintiffs have stated a claim

Defendants argue that Counts I through VI of Plaintiffs' complaint should be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) on various grounds. (R. 30, Bradford's & Miessen's Mem. Dismiss Compl.; R. 41, Spacesaver's Reply.) The Court addresses each of Defendants arguments in turn.

### i.    Whether Plaintiffs state a claim for breach of contract in Count I

Defendants first argue that Count I of the Complaint should be dismissed because the consideration for the non-competition clause in Miessen's employment agreement with MAI was inadequate and that clause itself was overly broad and therefore unenforceable. (R. 30, Bradford's & Miessen's Mem. Dismiss Compl. at 5-6; R. 23, Spacesaver's Mem. at 6-7.)

Under the traditional rule, Illinois courts do not inquire into the adequacy of the consideration to support a promise, only its existence. *Curtis 1000, Inc. v.* Suess, 24 F.3d 941, 945 (7th Cir. 1994) (citing *White v. Vill. of Homewood*, 628 N.E.2d 616, 619 (Ill. App. Ct. 1st Dist. 1993); *Goodwine State Bank v. Mullins,* 625 N.E.2d 1056, 1079 (Ill. App. Ct. 4th Dist. 1993)). Courts deviate from the traditional rule when examining post-employment covenants not to compete, instead courts "must determine whether there is adequate consideration to support the covenant not to compete." *Millard Maint. Serv. Co. v. Bernero*, 566 N.E.2d 379, 384 (Ill. App. Ct. 1st Dist. 1990). In Illinois, continued employment for a "substantial period" is sufficient consideration to support an employment agreement. *Id.* By departing from the traditional refusal to inquire into the adequacy of consideration, courts recognize that a promise of continued employment may be an illusory benefit where the employment is at will. *Curtis 1000*, 24 F.3d at 946. "The judicially devised requirement of a substantial period of postcovenant employment avoids the need to investigate the employer's intentions; it does this by in effect creating an irrebuttable presumption that if the employee was fired shortly after he signed the covenant the consideration for the covenant was illusory." *Id.* (internal quotation marks omitted). In such a situation, an individual is not only harmed by his loss of employment, but also by the enforcement of a restrictive covenant which limits his ability to obtain new employment. As this Court previously explained in *LKQ Corp. v. Thrasher*, 785 F. Supp. 2d 737 (N.D. Ill. 2011), it has doubts about inquiring into the adequacy of consideration where employment is not at will, and instead the employee ends her relationship with her employer, such as Miessen did with MAI. Despite its doubts, the Court proceeds to consider whether Miessen received continued employment for a "substantial period."

Plaintiffs contend that Miessen's 15-month employment constitutes sufficient consideration, thereby rendering the employment agreement enforceable. (R. 38, Pls.' Opp'n Bradford's & Miessen's Mot. Dismiss Compl. at 5-7.) Defendants counter that Illinois law requires two years of continued employment for consideration to be adequate. (R. 30, Bradford's & Miessen's Mem. Dismiss Compl. at 5; R. 23, Spacesaver's Mem. at 6-7.)

Illinois law does not, however, provide a clear rule to apply in this instance. Defendants are correct that some Illinois courts have held that two years of continued employment is necessary to constitute a "substantial period." *See, e.g., Fifield v. Premier Dealer Servs., Inc.*, 993 N.E.2d 938, 943 (Ill. App. Ct. 1st Dist. 2013) ("Illinois courts have repeatedly held that there must be at least two years or more of continued employment to constitute adequate consideration in support of a restrictive covenant."); *Brown & Brown, Inc. v. Mudron*, 887 N.E.2d 437, 440 (Ill. App. Ct. 3d Dist. 2008) ("Illinois courts have generally held that two years or more of continued employment constitutes adequate consideration"). In other cases, employment for a year was considered a "substantial period" of employment. *See Mid–Town Petroleum, Inc. v. Gowen*, 611 N.E.2d 1221, 1226 (Ill. App. Ct. 1st Dist. 1993) (while noting that the issue of consideration was not directly addressed, citing approvingly to two cases involving a post-covenant term of employment of approximately a year). In addition, courts have suggested that "factors other than the time period of the continued employment, such as whether the employee or the employer terminated employment, may need to be considered to properly review the issue of consideration." *Woodfield Grp., Inc. v. DeLisle*, 693 N.E.2d 464, 469 (Ill. App. Ct. 1st Dist. 1998). For example, in *McRand, Inc. v. van Beelen*, 486 N.E.2d 1306 (Ill. App. Ct. 1st Dist. 1985), the Illinois Appellate Court did not constrain itself by applying a bright-line test in considering whether a defendant was employed for a "substantial period" after signing a

restrictive covenant. In its analysis to determine whether sufficient consideration was provided to enforce a restrictive covenant, it considered the raises and bonuses received by the defendants, their voluntary resignation, and the increased responsibilities they received after signing a restrictive covenant. *McRand*, 486 N.E.2d at 1314.

Given the contradictory holdings of the lower Illinois courts and the lack of a clear direction from the Illinois Supreme Court, this Court does not find it appropriate to apply a bright line rule. While Defendants suggests that Illinois law establishes that at least two years of employment is required to satisfy the "substantial period" of employment requirement, Illinois courts have unequivocally stated their refusal to "limit[] the courts' review to a numerical formula for determining what constitutes substantial continued employment." *Id.* Consequently, the Court elects not to mechanically apply a bright-line test. Instead, it will employ the approach of the fact-specific approach employed by some Illinois courts.

In this case, Miessen worked for Plaintiffs for at least 15 months. (R. 1, Compl. ¶ 14.) Both the length of her term of employment, along with her voluntary resignation, lead the Court to conclude that she was provided with a "substantial period" of employment. Therefore, Miessen was provided adequate consideration to support the enforceability of the employment agreement.

Following this initial determination, the Court must consider whether the post-employment restrictive covenant not to compete was "reasonably necessary to protect the interests of the employer." *McRand*, 486 N.E.2d at 1311. The *McRand* court held that a restrictive covenant's reasonableness is measured by its hardship to the defendant, its effect upon the general public, and the reasonableness of the time, territory, and activity restrictions. *Id.* at 1314-1315. Defendants argue that the non-competition clause is overly broad in its geographic

scope and activity restrictions. (R. 30, Bradford's & Miessen's Mem. Dismiss Compl. at 5; R. 23, Spacesaver's Mem. at 6-7.) Because Defendants do not raise arguments regarding the other factors pertinent to assessing the clause's reasonableness, the Court will address only the geographic and activity restrictions.

Regarding the clause's geographic restrictions, the Seventh Circuit has held that "[g]enerally, courts will uphold a restriction on competition that is coextensive with the area where the promisee is doing business." *Liautaud v. Liautaud*, 221 F.3d 981, 988 (7th Cir. 2000) (citing *Lawrence & Allen, Inc. v. Cambridge Human Res. Grp., Inc.*, 685 N.E.2d 434, 442 (Ill. App. Ct. 2d Dist. 1997)). Here, Plaintiffs allege that the clause's geographic scope, which includes the entire United States and Canada, is necessary because Plaintiffs do business throughout both countries. (R. 38, Pls.' Opp'n Bradford's & Miessen's Mot. Dismiss Compl. at 8.) Plaintiffs also allege that a broad geographic restriction was necessary because Miessen's client territory while working for Plaintiffs involved several states throughout the United States. (*Id.*) Although the Court recognizes the broad scope of the geographic restriction on Miessen's future employment imposed by the clause, because the Court must make all inferences in Plaintiffs' favor, it finds that the geographic restriction is not overly broad, and therefore, not fatal to the enforceability of the employment agreement.

Moving to the clause's activity restriction, the Seventh Circuit held that in the employment context, "courts . . . frown upon an across the board limitation on [an employee's] right to ply his trade." *Bus. Records Corp. v. Lueth*, 981 F.2d 957, 962 (7th Cir. 1992). Similarly, Illinois courts are "hesitant to enforce noncompetition agreements that prohibit employees from soliciting or servicing not only customers with whom they had direct contact, but also customers they never solicited or had contact with while employed." *Eichmann v. Nat'l*

*Hosp. and Health Care Servs., Inc.*, 719 N.E.2d 1141, 1147 (Ill. App. Ct. 1st Dist. 1999). *See also McRand*, 486 N.E.2d 1306 at 1315; *Corroon & Black of Ill., Inc. v. Magner*, 494 N.E.2d 785, 793 (Ill. App. Ct. 1st Dist. 1986); *Jefco Labs., Inc. v. Carroo*, 483 N.E.2d 999, 1003 (Ill. App. Ct. 1st Dist. 1985). "Courts uphold only those noncompetition agreements which protect the employer's legitimate proprietary interests and not those whose effect is to prevent competition *per se*." *Eichmann*, 719 N.E.2d at 1147 (internal citation omitted). Illinois courts have instructed that restrictions on activities "should be narrowly tailored to protect only against activities that threaten the employer's interest." *Cambridge Eng'g, Inc. v. Mercury Partners 90 BI, Inc.*, 879 N.E.2d 512, 526 (Ill. App. Ct. 1st Dist. 2007) (quoting *Lawrence & Allen*, 685 N.E.2d at 442).

In the instant case, the clause bars Miessen from "engag[ing] in any business substantially related to the business of Montel within United States and Canada." (R. 1-1, Ex. C, Employment Agreement at 20.) Plaintiffs argue, in a conclusory fashion, that Miessen acquired substantial amounts of confidential information during her employment with Plaintiffs and the restrictive covenant was required to protect the information. (R. 38, Pls.' Opp'n Bradford's & Miessen's Mot. Dismiss Compl. at 7.) Even making all reasonable inferences in Plaintiff's favor, their argument fails to move beyond a "formulaic recitation of the elements of a cause of action" as instructed by the *Twombly* court. 550 U.S. at 555. In addition, the Illinois Appellate Court has found substantially similar clauses invalid. In *Cambridge Engineering, Inc. v. Mercury Partners 90 BI, Inc.*, the court found that a blanket bar on all activities for competitors was excessive in light of the limited arenas where the employee's knowledge would be competitively useful. 879 N.E.2d at 526. The court found that if the employee went to work for a competitor in an entirely noncompetitive capacity, he would still be violating the terms of his

contract, and that "[s]uch blatant overbreadth goes far beyond the standard for acceptable activity restrictions." *Id. See also Arpac Corp. v. Murray*, 589 N.E.2d 640 (Ill. App. Ct. 1st Dist. 1992) (finding a covenant not to compete to be unenforceable because it contained virtually unlimited geographic restraints and prevented the employee from engaging in the shrink wrap business in any capacity). According to the terms of the clause, Miessen is similarly barred from working for any competitor, even if she was employed in a noncompetitive capacity. This fact, coupled with the almost limitless geographic scope of the clause, renders the clause unenforceable.

Plaintiffs requested in its response to Bradford and Miessen's motion that if this Court were to find the clause unenforceable as written, that it use its discretion to modify or sever unenforceable provisions of the contract. (R. 38, Pls.' Opp'n Bradford's & Miessen's Mot. Dismiss Compl. at n.6.) Under Illinois law, a court may modify or "blue-pencil" an unreasonable agreement in order to make it comport with the law, or sever unenforceable provisions from a contract. *See Arpac*, 589 N.E.2d at 658; *Corroon*, 494 N.E.2d at 793. The fairness of the restraint initially imposed is a relevant consideration for the court in deciding whether to modify the restraining provision. *See Arpac*, 589 N.E.2d at 658. A court should refuse to modify an unreasonable restrictive covenant "where the degree of unreasonableness renders it unfair." *Eichmann*, 719 N.E.2d at 1149.

Here, the agreement has no severability provision, and the Court finds that because of the non-competition clause's severe deficiencies, a significant modification would be necessary to make it comport with the law. The Court also notes that Illinois courts have found that extensive judicial reformation of unenforceable post-termination restrictive covenants may be counter to public policy. *Cambridge Eng'g*, 879 N.E.2d at 529. Illinois courts have stated that modifying restrictive covenants gives employers an incentive to draft them as broadly as possible,

subsequently relying on courts to amend and enforce them to the extent that they were reasonable in the particular circumstances of each case. *Id.* Courts fear that this would have a severe chilling effect on employee post-termination activities, since the average employee cannot be expected to anticipate is enforceability of restrictive covenants. *Id.* With these considerations in mind, the Court declines to exercise its option of "blue-penciling" the restrictive covenant in the employment agreement. Accordingly, the Court finds that the employment agreement is unenforceable, and therefore Plaintiffs have failed to state a claim in Count I.

### ii. Whether Plaintiffs state a claim for intentional interference with a contract in Count II

Miessen and Bradford argue that the non-compete clause's invalidity compels the dismissal of Count II of the Complaint, which alleges intentional interference with a third-party contract. (R. 30, Bradford's & Miessen's Mem. Dismiss Compl. at 9.) Defendant Spacesaver argues in a separate motion that even if the non-compete clause was valid and enforceable, Spacesaver did nothing to induce the breach of the clause. (R. 41, Spacesaver's Reply at 3.) To state a cause of action for interference with a contract, the Complaint must allege: (1) a valid contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional and malicious inducement of the breach of the contract; (4) breach of contract caused by defendant's wrongful conduct; and, (5) resultant damage to the plaintiff." *George A. Fuller Co., a Div. of Northrop Corp. v. Chi. Coll. of Osteopathic Med.*, 719 F.2d 1326, 1330 (7th Cir. 1983) (citing *Swager v. Couri*, 376 N.E.2d 456, 459 (Ill. App. Ct. 3d Dist. 1978)).

The Court finds that because the employment agreement has been invalidated, Plaintiffs cannot prevail on this claim, as no valid contract exists. Accordingly, the Court finds that Plaintiffs have failed to state a claim in Count II.

### iii. Whether Plaintiffs state a claim for wrongful interference in Count III

Spacesaver argues that Count III of the Complaint should be dismissed because it is preempted by the ITSA, or alternatively, that Plaintiffs fail to allege a reasonable expectancy of entering into a valid business relationship with the department store chain. (R. 41, Spacesaver's Reply at 4.) Plaintiffs argue that the ITSA only preempts actions predicated on the misuse of secret information and that valid claims involving the misuse of non-confidential information are not preempted. (R. 38, Pls.' Opp'n Bradford's & Miessen's Mot. Dismiss Compl. at 10-11.) Plaintiffs cite *Hecny Transportation, Inc. v. Chu*, 430 F.3d 402 (7th Cir. 2005) in support of that proposition. (*Id.*) The Court will address each of Spacesaver's arguments in turn.

Section 8(a) of the ITSA, 765 Ill. Comp. Stat. 1065/8(a) states that "this Act is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret." The ITSA preempts civil claims that are based on the misappropriation of trade secrets. *Hecny*, 430 F.3d at 404. Valid claims involving the misuse of non-confidential information, such as theft, fraud and a breach of the duty of loyalty, are not preempted. *Id.* at 405.

It is telling that Plaintiffs do not deny that Count III is based on Miessen's divulging confidential information to Bradford and Spacesaver; indeed, their entire argument pertaining to Count III is premised on this fact. First, Plaintiffs allege that they had an expectancy of a valid business relationship with the department store chain because they arranged a transaction with the department store chain that involved 135 stores in Canada and 14 stores in the United States. (R. 39, Pls.' Opp'n Spacesaver's Mot. at 7-8.) Second, Plaintiffs allege that Bradford and Spacesaver had knowledge of this expectancy because even though Plaintiffs had not disclosed its relationship with the department store chain, Spacesaver developed a similar Product for the department store chain. (*Id.* at 8.) Third, Plaintiffs allege that Spacesaver used Plaintiffs'

confidential information to its own advantage in constructing and promoting the store in Florida using Plaintiffs' Product. (*Id.*) Fourth, Spacesaver's conduct prevented Plaintiffs from attaining their business expectancy with the department store chain. (*Id.*) Plaintiffs clearly premise their argument on their belief that Spacesaver's use of Plaintiffs' confidential information to develop its own mobile shelving unit interfered with Plaintiff's business relationship with the department store chain. While Plaintiffs are correct that the ITSA does not preempt non-confidential information, they have wholly failed to offer any argument that their claim is not based upon misappropriation of confidential information. Thus, the Court must dismiss Count III because it is preempted by the ITSA. Having found that Count III is preempted by the ITSA, the Court need not address Spacesaver's alternative argument.

### iv. Whether Counts IV, V, and VI of the Complaint are preempted by the ITSA

Defendants argue that Counts IV, V, and VI of the Complaint must also be dismissed because they are preempted by the ITSA. (R. 30, Bradford's & Miessen's Mem. Dismiss Compl. at 9-13; R. 41, Spacesaver's Reply at 5-6.) Defendants also argue that Counts IV and V must be dismissed for failure to state a claim. (R. 30, Bradford's & Miessen's Mem. Dismiss Compl. at 13; R. 41, Spacesaver's Reply at 5.) As noted above, the ITSA preempts civil claims predicated on the misuse of secret information. 765 Ill. Comp. Stat. 1065/8(a); *see also Alpha School Bus Co., Inc. v. Wagner*, 910 N.E.2d 1134, 1150 (Ill. App. Ct. 1st Dist. 2009); *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1265 (7th Cir. 1992) (stating that the passage of the ITSA "abolished all common law theories of misuse of [secret] information.") (citing 765 Ill. Comp. Stat. 1065/8(a)). If a plaintiff's claims are not dependent upon the misappropriation of trade secrets, the ITSA does not preempt those claims. *Alpha School Bus*, 910 N.E.2d at 1150; *see also Hecny*, 430 F.3d at 404.

In Count IV of the Complaint alleges misappropriation of trade secrets and/or confidential information in violation of common law and the ITSA. (R. 1, Compl. ¶¶ 88-98.) Plaintiffs' common law claims of misappropriation of confidential information are preempted by the ITSA because the passage of the ITSA abolished all common law bases for the misuse of secret information. *Composite Marine Propellers*, 962 F.2d at 1265. In Count V, Plaintiffs allege that Miessen breached her fiduciary duties when she passed on confidential information to Bradford and Spacesaver. (R. 1, Compl. ¶¶ 99-105.) Plaintiffs' breach of fiduciary duty and loyalty claims do not, however, rest solely on the allegation that Miessen shared confidential information with Bradford and Spacesaver. (*Id.* ¶ 101.) Plaintiffs also contend that Miessen commenced competition with Plaintiffs while she was still employed. First, the Complaint alleges that Miessen commenced communications with Bradford and Spacesaver as early as December 21, 2011, months before Miessen terminated her employment with MAI. (*Id.* ¶ 47.) Second, Plaintiffs allege that Miessen disclosed Plaintiffs' proprietary information while still employed by Plaintiffs for the purpose of securing employment with Bradford, which induced Bradford to increase its compensation offer to Miessen. (*Id.* at ¶¶ 48-52.) In summary, Plaintiffs allege that Miessen commenced competition with Plaintiffs while still under their employment, in violation of her duty of loyalty. (R. 38, Pls.' Opp'n Bradford's & Miessen's Mot. Dismiss Compl. at 13-14.)

Under Illinois law, a breach of fiduciary duty claim has three elements: "(1) that a fiduciary duty exists, (2) that the fiduciary duty was breached, and (3) that such breach proximately caused the injury of which the plaintiff complains." *Autotech Technology Ltd. Partnership v. Automationdirect.com*, 471 F.3d 745, 748 (7th Cir. 2006) (citing *Neade v. Portes*, 739 N.E.2d 496, 502 (Ill. 2000)). Employees owe a duty of loyalty to their employer. *Lawlor v.*

*N. Am. Corp. of Ill.*, 983 N.E.2d 413, 433 (Ill. 2012). A fiduciary cannot act inconsistently with his agency or trust and cannot solicit his employer's customers for himself. *Id.* The Court notes here that *Hecny* explicitly held that breach of fiduciary duty claims not based upon the use of confidential information are not preempted by the ITSA. 430 F.3d at 405.

Here, Plaintiffs have demonstrated that a fiduciary duty exists by virtue of the employer-employee relationship between Plaintiffs and Miessen. Plaintiffs have also demonstrated that Miessen breached this duty by commencing competition with Plaintiffs and acting in concert with Bradford and Miessen to solicit business from the department store chain. Plaintiffs allege that this breach is the cause of their loss of both proprietary information and a business relationship with the department store chain. Accordingly, Plaintiffs claim for breach of fiduciary duty survives Defendants' motions to dismiss.

Finally, Count VI of the Complaint alleges that Defendants engaged in a civil conspiracy to misappropriate trade secrets and to interfere with Plaintiffs' present and future economic relations. (R. 1, Compl. ¶¶ 106-09.) The ITSA preempts the portion of Count VI that alleges that Defendants engaged in a civil conspiracy to misappropriate trade secrets because the information at issue is confidential. The ITSA does not, however, preempt the portion of Count VI that alleges that Defendants engaged in a civil conspiracy to interfere with Plaintiffs' relationship with the department store chain because that claim is not premised on the misappropriation of confidential information. The Court therefore considers whether Plaintiffs alleged sufficient facts to state a claim for civil conspiracy.

To state a claim for civil conspiracy, a plaintiff must establish: "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators

in furtherance of the agreement that caused an injury to the plaintiff." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (citing *McClure v. Owens Corning Fiberglass Corp.*, 720 N.E.2d 242, 258 (Ill. 1999).

Here, Plaintiffs allege that Bradford hired Miessen away from MAI to serve as a liaison between Bradford and the department store chain and to aid in configuring Spacesaver products for the Aventura, Florida store. (R. 1-1, Ex. D, Montel's Statement at 21.) Plaintiffs allege that Bradford did so for the unlawful purpose of disrupting Plaintiffs' relationship with the department store chain. (*Id.* ¶ 41.) Plaintiffs further allege that Bradford, Spacesaver, and Miessen disrupted Plaintiffs' relationship with the department store chain by doing so. (*Id.* ¶ 41-43.) Making all reasonable inferences for the Plaintiffs, they have sufficiently demonstrated that the Defendants had an agreement to interfere with Plaintiff's business relationship, and by misappropriating Plaintiffs' proprietary information Miessen took an act in furtherance of the conspiracy. The facts alleged in the complaint sufficiently establish the elements required to state a claim for civil conspiracy, and Count VI survives Defendants' motions to dismiss.

## CONCLUSION

For the foregoing reasons, Miessen's and Bradford's motion to dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) (R. 22) and Spacesaver's motion to dismiss Plaintiffs' complaint pursuant to Rule 12(b)(1) (R. 21) are DENIED as to all counts. Miessen's motion to dismiss Plaintiffs' complaint pursuant to Rule 12(b)(2) (R. 26) is GRANTED as to Count III, and DENIED as to Counts I, IV, V, and VI. Miessen's and Bradford's motion to dismiss Plaintiffs' complaint pursuant to Rule 12(b)(6) (R. 29) and Spacesaver's motion to dismiss Plaintiffs' complaint pursuant to Rule 12(b)(6) (R. 21) is GRANTED as to Counts I, II, the common law claims in Counts III, IV, and the conspiracy to

misappropriate trade secrets claim in Count VI, and DENIED as to Count V, and the conspiracy to interfere with present and future economic relations claim in Count VI. Plaintiffs are directed to exhaust all settlement possibilities, in light of this opinion, before the next status hearing, which will be held on March 11, 2014, at 9:45 a.m.

ENTERED:  _____
**Chief Judge Ruben Castillo**
**United States District Court**

**Dated: January 28, 2014**